Good morning, Your Honor. My name is Kevin Coleman, and I'm representing the appellant at the State Bar of California. In this case, the State Bar is asking the Court to determine that costs awarded by the California Supreme Court in an order imposing discipline on Mr. Findley are not dischargeable in the bankruptcy case that he filed in 2004. The relevant basis for this is Section 523A7 of the Bankruptcy Code, which, as I'm sure you know, has three essential elements to it. One, the debt has to be a fine or a penalty payable to or for a governmental unit, which is not compensation for actual pecuniary loss. So now California has responded to us and said this really is a fine. It's not compensation for pecuniary loss, but we compute it by the pecuniary loss. Is that where we are? I mean, it's really – you really can't – There is a – the metric for calculating the costs is, to some extent, going to be dictated by actual costs. I'll be up front with you about that. But what I – I think it's important to understand that notwithstanding that aspect of the statute, that the costs can still legitimately be deemed penal in nature. And I'd like to focus on this Court's decision cited in our brief, the United States v. Zachor case, in which the Court was called upon to determine the validity of certain aspects of Federal sentencing guidelines, among which required the convicted individual in that case to pay the cost of his supervised release. Now, in explaining what the nature of legitimate punishments were, the Court noted that it was appropriate to take into account two distinct kinds of harm when determining what punishment is deserved. The first looks at the consequence to the victim. But second, that the – one should also – or courts should also take into account the larger social costs associated with the misconduct. In other words, it's a legitimate aim of a punishment to take into account the fact that because of the misconduct, the State has had to incur the cost of prosecution or incarceration. But isn't that essentially the same argument that was available to you in Taggart? I think what was happening in Taggart is that based upon the statute as it existed back in 2001, there was no – the panel in Taggart was having difficulty concluding that the costs, in fact, served that purpose. One of the factors that they looked at was, well, you have a section of the Business and Professions Code that specifically authorizes an award of sanctions, and you didn't proceed under that section. And when we look at Section 608, 610, these look like costs to us. So we infer – we're inferring that the California legislature's intention was that costs not be penal in nature, which, of course, is why the California legislature responded in order to make its intentions clear that, in fact, these things – It certainly responded, and it relabeled it, whether it makes a difference or not, whether it transformed compensatory assessments into penalties is another question. How do we – you know, in Gada, we heard arguments from you and from Mr. Gada as to the effect – Mr. Gada was arguing that you can't make this – you can't impose these retroactively because that's punishment. And the State Bar basically said, no, it's compensatory. Actually, I think that's not correct, Your Honor. The State Bar in that case took the position that these were penalties. It was focusing on the question of including an additional mechanism for enforcement. I mean, that was the issue there. But the State Bar was not taking the position that the costs themselves were punitive in nature, penal in nature. Well, maybe Judge Beezer went on, elaborated on your argument, but that was part of his reasoning. That may have been his reasoning. It was certainly not the State Bar's position. That's really the point I wanted to emphasize. I would like to say, though – I mean, it's an interesting case, and I understand your position, I think, pretty well. And as the BAP said, there are merits on both sides of the argument, and it's a pretty close case, really. One side, at the end of the day, these are really compensatory damages. As you say, it's one part of the metric, but you calculate it based on your actual costs. And obviously, you haven't talked about it yet, but the Kelly case has some impact here as well. Well, I was just about to get to that point, Your Honor, which is I think Kelly is clear that when you are trying to determine whether something is compensation for actual pecuniary loss under Section 523A7, that you have to look at the State's interests and purposes for imposing that liability. In Kelly, the restitution award, and it works this way in many other restitution cases, that the amount ordered to be repaid is measured by the damages suffered by the injured party. But yet, because the reason that the charge is imposed is not strictly compensatory, but rather to accomplish larger purposes of the State, Kelly held that it would not be treated as compensation for 523A7 purposes. One other case which I think is useful here is that this Court's decision in the Berg case. In Berg, the question was whether or not a proceeding to impose sanctions under Federal Appellate Procedure 38 would be stayed by Mr. Berg's bankruptcy filing. And the panel there held very clearly that, no, it's not stayed because we view the proceeding under FRAP 38 as essentially enforcing the State's police and regulatory power, and therefore it's accepted from the reach of the automatic stay under Section 362B. The reason why I think this is important is that the Court notes that, well, even though a private party may be compensated by the an award of sanctions under FRAP 38, the Court is imposing them really to uphold the government's own interests. And I think that's what is happening here. I think the difficulty for us, and one we're going to have to sort through, is what is the reach of Taggart? Because we can't overturn Taggart. We have to be able to look our colleagues in the eye and say, there's something new and different here. And Kelly existed before Taggart. Many of these other arguments existed pre-Taggart. I think we're left with the question, does the statutory change make a difference, a difference sufficient to essentially overrule a prior panel's decision? And we just have to look that squarely in the eye. I mean, the other arguments are interesting and perhaps compelling if we're looking at it on a fresh slate, but we've got to look Taggart squarely in the eye and say, no, things have changed. Well, I understand Your Honor's comment. Otherwise we're going to get a phone call after we issue our decision from our colleagues saying, what are you doing? That would not be good. I wouldn't want to put you in that position. Oh, no. It happens quite often, actually. An intervening change in the law can allow a panel to revisit a question. And it's particularly appropriate in this case because Taggart's decision turned on what it thought was the intention of the California legislature in imposing the costs. And so the legislative response to that decision clarified what the California legislature intended. So in a way, I guess what I'd suggest is that the State of California should be free to clarify what it's intending to do and why it is doing things in response to federal court decisions. And if that changes again. I understand. And under Kelly, that may have some force. But this is ultimately a question of federal law. And relabeling may or may not have an impact on our determination to federal law. I'm not quarreling with you. I'm just kind of stating. Or one member of the panel sees it. Well, again, I guess I would just emphasize I do think that in light of the change in the law, that Taggart is not binding and that this Court can look anew at the question. What I would also encourage the Court to consider, too, is that recently, within the last year, the First Circuit has now joined with other courts in holding that costs awarded in connection with attorney disciplinary proceedings are nondischargeable under Kelly. Let me ask you a practical question that's outside the record just for my own edification. How big an issue is this with the State Bar? How many bankruptcies do you see following discipline proceedings? I don't have the exact numbers for you, unfortunately. What I can tell you is that I am ‑‑ I have personally represented the State Bar in three matters where attorneys have filed for bankruptcy after being disciplined and where costs awards have been imposed and where they have sought readmission to practice, which is really the trigger for the State Bar more than anything else. Is what happens on the application for readmission, whether the debt is discharged or not? That's the position that's taken. And I do not have to abide by this condition, and I'm not bound by Section 6140.7 of the California Business and Professions Code. You have to let me back in even though the Supreme Court has said I have to pay these costs and the legislature has said you have to pay these costs as a precondition for being reinstated. And you read the BAP decision saying you might be gaining a PYRIC victory because there's a different provision in Chapter 13. Do you have a response from a practical point of view? Well, only that I think Chapter 13 presents a very different context, because in Chapter 13, a debtor is required to make best efforts to repay its debts, which is not present in the Chapter 7 case. Clearly, you are entitled to discharge a broader range of liabilities in Chapter 13 because you have to make an effort to repay your debts over a 3- to 5-year period. Similarly, the – in Chapter 13, the discharge is only entered after the Chapter 13 plan payments are completed. So, I mean, that's another hardship. But I think that the circumstances are really quite distinct. And actually, I failed – I neglected to mention at the outset, but I would reserve 2 minutes of time. Very good. Thank you. Mr. Finley? I apologize, Your Honors. I looked at the calendar, and there was another case. I thought I had time to feed my meal. It was submitted, but we wouldn't want you to incur more penalties because then we'd be back here on a different issue on penalties, right? I would appreciate not having to do that. This has been a bit of a marathon for me. Can you move your mic just a little closer? Judge Aldrich needs to hear you on the tape, and it's easier for us to hear in this acoustically challenged courtroom. Is that better? That's better. Thank you. Okay. First of all, I'd like to note that in the federal statute it is a three-part analysis, and the first part is whether or not it is a penalty. Therefore, characterizing this as a penalty is not really the issue. Whether you call it a penalty or not is not where I'm arguing. It is conjunctive, not disjunctive. The third part being that it's not compensatory. So the whole focus should be is it compensatory, not is it a penalty. If you make me pay money, I'm going to consider it a penalty, whether it's a civil penalty or a criminal penalty. It's still a penalty. So that characterization, I think, is not that important to resolving this case. You need to move on to the third part, which is where the argument really is, in my opinion. I'd also like to note that, as you said, Taggart would be ruling in this case if there had not been something changed in the interim. If you look at the change in the interim, first of all, Taggart is really interpreting facts as they affect a federal statute. That federal statute has not changed. The state statute is one of the facts that was considered in resolving the issue in the Taggart court. So if you look at the change, the first thing I would note is that the change itself states in the last portion, this does not change existing law. At the time this was passed, Taggart was existing law, and I doubt that the state bar was unaware of that fact. It was not the legislature who drafted this amendment to the legislation. It was the state bar who drafted it. So I'm curious, why would the state bar include this does not change existing law? If they're aware that Taggart was part of the law and they're aware that the state legislature cannot overrule the federal appellate court, then applying the rule of Occam's razor, I would conclude that it was put there as a code to the legislature. There's nothing going on over here. You don't really have to look at this. You can just pass it because it's not really changing anything. I think there was deception, and they got this through the state legislature without it being fully reviewed. Well, it was passed, so that's where we are. And the legislative history and arguments would indicate that the legislature, whether at the insistence of the state bar or not, was trying to address Taggart and trying to say to us, Circuit, look, we mean this as a penalty. Don't you guys get it? And we're entitled under Kelly to say so. And that's the end of it. Isn't that what the legislature was thinking it was doing, at least? I don't think so. I think the legislature thought they were simply passing something that restated whatever existing law was. Otherwise, why include the statement, this does not change existing law? It has no purpose other than to clue the legislature that you're really busy and there's a lot of things you need to spend a lot of time on, this isn't one of them. That's just my opinion. I present that for your consideration. But even if you go beyond that, the change in the law is to try to state intent of the prior legislation. The Taggart court wasn't struggling with determining their intent. They looked at the legislative history. They looked at statements of those who had drafted it. They had a very firm basis for determining what the original intent was. That original intent is a fact written in granite. You cannot come along later because you don't like the consequences of that intent and say, no, we didn't intend what we intended at that time. We now are telling you that our intent was something else. You can pass a law that says that, but it doesn't change the fact of what the original intent was. Taggart looked very closely at that issue. They determined it not on guess, not in a manner that they struggled. They looked at and spoke with the, you know, whatever communications they had, the original drafters. The original drafters know what their intent was. Subsequent legislature doesn't. The Taggart court knew what their intent was, and they included that. It's not dicta. It is part of the basis of their decision. Once they made that decision, they said this was the intent at the time that this statute was passed. That becomes part of Taggart and part of the law. State legislature can't go back and change history. Well, they do all the time, really. They see a court decision, and they say, okay, here's the problem. We want to draft around that problem from our point of view. And they could very well have done so by redrafting the entire setup, or they could have even repassed the original legislation with its exact language, and they could have stated whatever the intent was last time, this is our intent when we repass this. Well, let's assume. That would be a totally different scenario. But what they did was the way it's drafted, they're saying this is what the intent was back then. Well, let's assume for the sake of the argument that the legislature really wanted to clarify its intent, and they said this is supposed to be a penalty. I gather your argument is it doesn't matter how they label it. It's a penalty. But theoretically, though, in terms of the Bankruptcy Code, can't a penalty include compensatory elements without transforming the penalty into a purely compensatory assessment? It can. But in this instance, there is nothing in the computation that is based on anything other than, as California law states, a fair representation of the actual costs incurred. There's nothing in there that relates it to noncompensatory costs. There's nothing in there that says if the person committed a very minor infraction, then it will not exceed X amount. There's nothing in there that says if the person committed a very serious infraction, it will be at least such an amount. There's nothing in there that considers at all the severity of the underlying conduct. Why should it? Why does it need to? For example, couldn't the legislature permissibly say if the State Bar, in all cases, may collect a statutory penalty of $20,000? And they have said that. The State Bar has chosen not to pursue their remedies under that portion of the law. Let's assume further that the $20,000 or whatever figure it is, is based on what they believe to be the cost of the proceeding. The legislature can still allow the penalty, and it's a penalty, even though it may have an underlying component or rationale may be compensatory, right? The distinctions that are made by the federal law are penalties that are based upon compensatory versus noncompensatory basis. In the California setup, they have a compensatory basis, which is what we're dealing with here, and they have the ability to make a noncompensatory penalty. They've divided it out. They've clearly separated the two. That means that everything that falls under the compensatory clearly falls under the federal statute that says it's dischargeable unless it's a penalty. I forget what the second one is at the moment. And it's not based upon compensatory cost. When you say and, it includes the possibility that it can be a penalty that is based upon compensatory cost, but then it is nondischargeable. It can also be a penalty which is not based upon compensatory cost, in which case it is not dischargeable. The legislature could make it mixed, which would make it more difficult for this court to decide exactly what to do with it. But the legislature did not do that. They have left them clearly separated. This is clearly a compensatory assessment. Therefore, it clearly, under the federal law and under the TAGR ruling, is dischargeable. I think we have your argument at hand. Do you have any questions? Judge Thompson is an expert in bankruptcy serving on the National Committee and an expert on California law, too. You made a good argument. Thank you, sir. All right. Rebuttal? Thank you. I think the Kelly case is important because it says that the motivation of a State in imposing a charge is what controls the character of the debt as being compensation for actual pecuniary loss. Now, it's not an attorney disciplinary cost case, but I think there's a helpful description in the Seventh Circuit's Zerinsky case that involved the dischargeability of costs awarded in connection with a criminal prosecution. And it says that what a county expends in a criminal prosecution in the fulfillment of its statutory police power responsibilities is not a, quote, an actual pecuniary loss, close quote, to the county. It is, of course, an expenditure by the government, part of the expense of governing, but the county did not undertake the expense expecting to create a debtor-creditor relationship. In this case, the county did its duty to protect the public by convicting and punishing a law violator. That's the situation that we have when the State Bar prosecutes a disciplinary proceeding. It doesn't do it in order to collect money that's owed to the State or the State Bar. It's merely that out of this process, a charge is created, a liability is created. Again, it's only created because of the finding that the attorney has committed acts which subject them to discipline. So the mere fact that the penalty is measured by, in some ways, by costs to conduct the prosecution, I think is really to miss the point of why it is that these costs are being imposed and why the cost is being imposed is what's important under Kelly. Thank you. Thank you both for your arguments. I think it's a very interesting issue, and we'll study it carefully. The case, I just argued, will be submitted for decision, and it will be in recess for the morning.
judges: Aldrich, Thompson, Thomas